Nate McConnell
McConnell Law Offices
721 Howell Street
Missoula, MT 59802
(406) 214-2445
nate@natemcconnelllaw.com

Richard S. Edelman
Mooney, Green, Saindon, Murphy &
Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
Redelman@MooneyGreen.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE ) | |
| OF WAY EMPLOYES DIVISION/IBT ) | |
| Plaintiff, ) | |
| v. ) | Case No. |
| ) | |
| MONTANA RAIL LINK, INC. ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") brings this complaint against Montana Rail Link, Inc. ("MRL" or "Carrier") for a declaratory order that MRL has violated Section 2 Seventh of the Railway Labor Act ("RLA"), 45 U.S.C. §152 Seventh, by unilaterally

1

changing and abrogating an agreement concerning provision of "rubber boots" to be used in the work of BMWED members for MRL.

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE"). BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of all employees of MRL working in the class or craft of maintenance of way employee.

2. MRL is a "rail carrier" as that term is defined in Section 1 First of the RLA, 45 U.S.C. §151 First. MRL conduct rail operations in Montana and is headquartered in Montana.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because BMWED seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because MRL operates rail lines in this District, does business in this District, and is headquartered in this District.

## STATEMENT OF THE CLAIM

5. BMWED, along with a number of other rail unions, is party to a collective bargaining agreement with MRL that covers MRL's maintenance of way employees ("CBA").

6. The CBA provides that MRL "shall furnish employees all… rubber boots …when necessary for the safe performance of their duties".  Article V Section 1 of the CBA provides as follows:

> The company shall furnish employees all tools, equipment, furniture, goggles, rubber boots, aprons, hard hats, masks, respirators, ear protective devices and specialized protective clothing items when necessary for the safe performance of their duties.  When such items are furnished, employees will be required to use them in accordance with the Company's instructions.

7. The wearing of rubber boots by maintenance of way employees who work outdoors in the winter is important for their safety in that they work on tracks and in railroad rights of way that are often icy or covered with snow.  Rubber boots both provide greater traction on wet, icy and snowy surfaces, and prevent the feet of workers from getting wet which can cause injury in freezing conditions.

8. MRL's own General Safety Rules for Mechanical, Engineering and Administration Employees require employees working in icy and snowy winter

conditions to wear anti-slip winter boots. Part G-3 of those rules provides:

> Employees will wear anti-slip winter footwear, which includes boots with studs or slip-on studs over non-studded boots, when working in icy and or snowy conditions. Only MRL approved winter footwear may be worn. Take extreme caution when transitioning from snow or ice-covered surfaces to hard surfaces. I.E. – locomotive walkways, office/building floors, truck beds, etc.

9. MRL's Engineering and Mechanical Safety Rules also require employees to wear anti-slip winter boots. Part EM-1.4. of those rules similarly states:

> Employees will wear anti-slip winter footwear, which includes boots with studs or slip-on studs over non-studded boots, when working in icy and or snowy conditions. Only MRL approved winter footwear may be worn. Take extreme caution when transitioning from snow or ice-covered surfaces to hard surfaces. I.E. – locomotive walkways, office/building floors, truck beds, etc.

10. Notwithstanding Article V of the CBA, and MRL's own worker safety rules, MRL is refusing to provide rubber boots to its maintenance of way employees who work outdoors in the winter, or to reimburse them for purchase of such boots, when those employees need those boots to work safely in such conditions. Instead, MRL has informed employees of options for them to purchase rubber boots on their own at a discounted price.

11. BMWED and other unions wrote to MRL on November 21, 2022 regarding the Carrier's refusal to furnish rubber boots to employees who work outside in the winter, or to reimburse them for the cost of the boots. The unions asserted that MRL has a clear obligation under the CBA to provide rubber boots.

12. By letter dated December 1, 2022, MRL denied that it is obligated to furnish rubber boots to its employees who work outside. MRL contended that the unions had confused the rubber boots referred to in Article V with what MRL referred to as winter "over-boots" utilized by employees "when working outdoors in wet or snowy conditions". MRL asserted that it has no obligation to provide such over-boots and that it negotiated a reduced purchase price for employees who desired to purchase over-boots. MRL asserted that the reference to rubber boots in Article V of the CBA referred to boots used "in specialized work environments, not the winter or over-boots worn to increase comfort in wet or wintry conditions".

13. The unions responded on December 14, 2022, rejecting MRL's contentions.  Among other things, the unions asserted that the distinction MRL had drawn between rubber boots and rubber overshoes was specious, that MRL's own rules require employees to wear anti-slip footwear in the winter when working in icy and or snowy conditions, that MRL had previously expressly required employees to wear "anti-slip footwear", and that the parties had previously mutually understood that MRL was to provide rubber boots in the winter and MRL had done so.

14.  As of the date of this complaint, MRL is continuing to refuse to provide rubber boots for its maintenance of way employees who work outdoors in the winter, or to reimburse them for the purchase of rubber boots.

## CAUSE OF ACTION

15. The allegations of paragraphs 1 through 14 are incorporated by reference pursuant Fed. R. Civ. P. 10(c).

16. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

17. Section 6 of the RLA, 45 U.S.C. § 156, provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

18. By refusing to provide rubber boots for its maintenance of way employees who work outdoors in the winter, or to reimburse them for the purchase of rubber boots, MRL is unilaterally changing and abrogating the parties' collective bargaining agreement in violation of RLA Section 2 Seventh.

## **REQUEST FOR RELIEF**

WHEREFORE, BMWED respectfully requests that the Court:

A. DECLARE that MRL has violated RLA Section 2 Seventh by refusing to provide rubber boots for its maintenance of way employees who work outdoors in the winter, or to reimburse them for the purchase of rubber boots, MRL is unilaterally changing and abrogating the parties' collective bargaining agreement in violation of RLA Section 2 Seventh.

B. GRANT BMWED all additional relief that may be equitable, including a reasonable award of attorneys' fees.

                              Respectfully submitted,

                              */s/Nate McConnell*
                              Nate McConnell
                              McConnell Law Offices
                              721 Howell St.
                              Missoula, MT 59802
                              (406) 214-2445
                              nate@natemcconnell.com

                              */s/ Richard S. Edelman*
                              Richard S. Edelman
                              Mooney, Green, Saindon, Murphy & Welch, P.C.
                              1920 L Street NW, Suite 400
                              Washington, DC  20036
                              (202) 783-0010
                              Redelman@MooneyGreen.com